## COMMONWEALTH vs. GEORGE W. PARKER.

Hampden.    September 24, 1895. — April 2, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Embezzlement — Indictment — "Pieces of Paper" — "Railroad Tickets" — "Property" — Venue — Evidence.*

An indictment, charging the embezzlement of "fifty pieces of paper, each of the value of two dollars, fifty railroad tickets, each of the value of two dollars," of the property of a certain railroad corporation, is not fatally defective by reason of the omission of the word "and" between the different allegations naming the property embezzled.

The term "railroad tickets" is a sufficient description of property in an indictment for embezzlement, without a more particular statement of what the tickets are.

There is no such difference between pieces of paper and railroad tickets in reference to the statutes punishing embezzlement as to make it improper to charge an embezzlement of both kinds of property in the same count of an indictment.

An ordinary railroad ticket in such form as to show that an innocent holder of it is entitled to ride over a railroad is "property," within the meaning of Pub. Sts. c. 203, § 40, relating to embezzlement.

A person who has embezzled property in his possession may be indicted here, under Pub. Sts. c. 213, § 20, although the act of embezzlement was committed in another State. KNOWLTON, J. dissenting.

At the trial of an indictment for the embezzlement of railroad tickets, alleged to be the property of a certain railroad corporation "duly and legally established" under the laws of this Commonwealth, a witness, who had been the general ticket agent of the corporation for over thirty years, testified that the railroad had been operated under the name set out in the indictment for more than twenty years; and that the corporation had operated the railroad since between a city in another State and a city in this Commonwealth. Various acts and resolves of both States, and also of a third State, were introduced in evidence, showing that the corporation, although acting under the legislative authority of the three States, was, in the transaction of business, but a single corporation. *Held,* that the defendant was not prejudiced by the testimony of the witness.

At the trial of an indictment for the embezzlement of railroad tickets, certain tickets given by A., who was a ticket broker, to the marshal of the city where the defendant was arrested, and procured by A. from B., with whom the defendant was in the habit of trading tickets for produce at B.'s shop, are admissible in evidence; and a rule of the railroad corporation, providing that, before baggage is checked, the ticket held by a passenger "should be cancelled by" an extra punch, is also admissible.

Where, at the close of the evidence upon the trial of an indictment for the embezzlement of railroad tickets, the government is required to elect upon which

ticket it will rely, no error appears in the admission of evidence, most, if not all, of which is competent for consideration on the issue as it is finally submitted to the jury after such election.

INDICTMENT, under Pub. Sts. c. 203, § 40, alleging that the defendant, on May 1, 1894, at Springfield, " being then and there the clerk, servant, and agent of the New York, New Haven, and Hartford Railroad Company, a corporation then and there duly and legally established" under the laws of said Commonwealth, " did then and there, by virtue of his said employment, have, receive, and take into his possession certain goods, chattels, and property, to wit, fifty pieces of paper, each of the value of two dollars, fifty railroad tickets, each of the value of two dollars, of the goods, chattels, and property of the said New York, New Haven, and Hartford Railroad Company," and the defendant " the said goods, chattels, and property then and there feloniously did embezzle and fraudulently convert to his own use, without the consent of the said New York, New Haven, and Hartford Railroad Company," whereby the defendant was " deemed to have committed the crime of simple larceny."

In the Superior Court, before the jury were empanelled, the defendant moved to quash the indictment, for the following reasons :

" 1. Because no offence known to the laws of this Commonwealth is therein fully, accurately, and sufficiently set forth.

" 2. Because the indictment is wholly vague and uncertain, in that it does not appear in said indictment whether or not the ' fifty pieces of paper ' alleged to have been embezzled are one and the same with the ' fifty railroad tickets ' also alleged to have been embezzled, and there is nothing in said indictment to show whether the words ' fifty pieces of paper ' and the words ' fifty railroad tickets ' describe the same or different property of the New York, New Haven, and Hartford Railroad Company.

" 3. Because no part of the property alleged to have been embezzled is therein fully and accurately described. The tenor and import of the said ' fifty pieces of paper ' is not in any way set forth and described. The said ' fifty railroad tickets ' are not fully, accurately, and sufficiently described in that the numbers, the points of issue, points of starting, and destination thereof are not set forth.

" 4. Because two separate and distinct offences are therein set forth, namely, first, the embezzling of ' fifty pieces of paper,' which is an offence, if at all, at common law, and, secondly, the embezzlement of ' fifty railroad tickets,' which is not an offence under the common law, but only, if at all, under the statutes of Massachusetts.

" 5. Because the indictment alleges the embezzlement of goods, chattels, and property of the New York, New Haven, and Hartford Railroad Company, instead of the property of the New York, New Haven, and Hartford Railroad Company, or the property of another, within the language of the statute."

*Maynard,* J. overruled the motion ; and the defendant excepted.

At the trial, it appeared that the defendant was a conductor in the employ of the New York, New Haven, and Hartford Railroad Company.

Those portions of the testimony which are enclosed in brackets were objected to by the defendant, and admitted subject to his exception.

B. P. Holmes, a witness for the government, testified as follows :

" In June, July, and August, 1894, I was in the employ of Thiel's Detective Agency of New York City; on the afternoon of August 9 I bought a ticket from New York to Springfield numbered G. C. O. 54020 ; shortly before four o'clock I boarded a train for Springfield ; I took a seat in the second car ; shortly after passing through the tunnel, after leaving New York, the defendant collected my ticket and those of my companions ; I was seated on the inside ; my ticket was in my hat ; I was reading a newspaper when he took my ticket ; I heard him say, ' Are you going through ? ' he turned to the passengers on the other side, and I heard him use his punch. [On July 22, I came to Springfield, and from that day to the fourth day of August I was engaged in shadowing the defendant ; on four days of each week he came in at 7.27 P. M. ; on nearly every one of those days I saw him leave the depot and go direct to Mesick's store, which is on Lyman Street ; when Mesick was there the defendant would go inside and talk with him for fifteen or twenty minutes ; I have also seen them in front of Gruendler's hotel ; sometimes there would be no light in the store and no one in there ; I don't recall any time that the defendant met Mesick in Gruen-

dler's; on some occasions I have seen the defendant take a bundle from Mesick's store. On July 23 the defendant came from the depot and walked down Lyman Street; Mesick was standing in the doorway of his store, and the defendant went into the store; I don't know how long he remained inside; three fourths or at least two thirds of the times I saw him he went into Mesick's store; sometimes, evidently, they would be alone, as the store would be dark; Mesick came down once just before train time and opened his store.] "

On cross-examination, the witness testified as follows:

" Mesick's store was a wholesale fruit store on Lyman Street, nearly opposite the driveway to the depot; usually the store was open; it was n't open every night I was there; . . . I could n't tell what the bundles were that the defendant took from Mesick's store; Mesick's employees were around there sometimes; I never went in to see; . . . I made a memorandum on the evening of each day. On August 9 I bought a ticket at the Grand Central station; I noticed the conductor when he came in; I was sitting on the second last seat; I did n't see him when he took my ticket; the first stop was New Haven; the next time I saw the ticket was in the police court."

Henry Dotzer, a witness for the government, testified as follows:

" In June, July, and August, 1894, I lived in Hoboken, New Jersey, and was in the employ of Thiel's Detective Agency of New York City; [from July 17 to August 17, I had the defendant under surveillance almost daily; on several occasions, on leaving the train at Springfield at 7.27 P. M., he would walk down Lyman Street, and, if Mesick happened to be in his store, the defendant would stop there and stay a while and come out and go into Gruendler's; if Mesick was n't there, he would go into Gruendler's direct; when he would come out, if Mesick was there, they would go into the store; if Mesick was n't there, he would go home at once; four times each week he came in at 7.27 P. M.; three fourths of the time he went into Mesick's; on one occasion he and Mesick were in Mesick's store, and as I walked by on the opposite side of the street I saw the lights of two cigars; on several occasions the defendant would come down in the morning, stop at Mesick's, at Gruendler's, or go

over to the depot, or walk about town, and then go back to Mesick's ; every day he was off he would go to Mesick's ; he had nothing with him that I could see; I have seen the defendant and Mesick come out together ; sometimes Mesick would lock the door and go away after the defendant left ;] I was in Springfield the night the defendant was arrested."

On cross-examination, the witness testified as follows :

" The defendant was arrested August 17 ; during the time I was here it was rather light on some occasions ; when I saw the light from the two cigars it was dark ; I could n't see the two men, but I could see the lights from the cigars ; Mesick was n't at home every day, I saw him coming from New York twice ; I don't know on how many other occasions he was away ; on one or two occasions Mesick's wife was there and some others, but they came right out again ; I don't know whether there was any one else there or not."

Shubal F. Butterfield, a witness for the government, testified as follows:

" I am foreman of the ticket department of the New York, New Haven, and Hartford Railroad Company ; punch P. is the gateman's punch at the Grand Central depot.  On June 1st, I received instructions with reference to tickets that came in ; I examined the tickets taken up by the defendant; he made a report of his tickets every day ; the report does n't show where it came from ; he made one report in New York, and one other, two reports each day ; we had all his reports from June last, and from there down through ; his tickets and collections of the day and train accompanied the reports ; the reports were put in a bag in New York, and left with the accounting department; I don't know into whose hands the reports came first; the defendant's reports were sent with other conductors' collections from New York, tied up separately, tickets, conductor's name, and number of train on book; the reports came in a sealed envelope ; I was the first one in the office to get them ; [I never found ticket A 58813 in his collections ; it bears no punch mark ; I looked for it on August 2 and right along until August 17, the time of the defendant's arrest; it had never come in ; ticket G. C. 2, 52964, did n't come in at all ; one coupon was punched with the gateman's punch ; the defendant's punch was a hatchet ;

I looked for it until the day of the arrest; I looked for ticket G. C. O. 54020 from August 9 to August 17; it did n't come in in his returns.] " A previous witness had testified to buying tickets A 58813 and G. C. 2, 52964.

James N. States, a witness for the government, testified as follows:

" I am the general ticket agent of the New York, New Haven, and Hartford Railroad Company, and have been since 1862; [this road has been operated as the New York, New Haven, and Hartford Railroad Company since 1872, I think; it has been operated as a corporation since then between New York and Springfield;] I have the tickets printed for the railroad; I delivered them to the agents; I know nothing of them since; the value of a ticket is $2.75; tickets in the hands of agents before selling are the property of the New York, New Haven, and Hartford Railroad Company."

Fred Hadd, a witness for the government, testified as follows:

" I am police inspector of Springfield. On August 17 I arrested the defendant at the depot, at 7.27, or within two or three minutes of that time; I saw him step off the train; I waited until he got to the baggage-room; he changed his coat; he had a box, he left that and came with me; we came down Lyman Street; when we got to Gruendler's he said he wanted to go in; I said he could n't; we boarded a car; when we were turning the corner of Lyman Street he took something out of his pocket with his left hand; I said, ' George, you put that back in your pocket.' We got off the car at Pynchon Street, and I walked him into one of the station rooms; Marshal Rice pulled out a bundle of tickets from his pocket."

F. L. Gunn, a witness for the government, testified as follows:

" I am a ticket broker in Springfield. Somewhere about August 17 I gave about thirty New York, New Haven, and Hartford Railroad tickets to Marshal Rice; I could n't identify any of the tickets; I got them from Mesick; [all the tickets I gave to Marshal Rice I got from Mesick; I got the most of them that day at his store.] "

On cross-examination, the witness testified as follows:

" I got them in the forenoon of the day the defendant was arrested; I bought tickets from Mesick frequently; I have

known times when I could not get tickets of Mesick, and he would go to the post office and then I could; you can get tickets in the hotels and other places; I have no records of any tickets; I bought New York, New Haven, and Hartford Railroad tickets from other sources, and kept no record of them; drummers sometimes buy tickets to save charges on extra baggage and then sell them."

Hiram M. Kochersperger, a witness for the government, testified as follows:

" I am the comptroller of the New York, New Haven, and Hartford Railroad Company, and have been for seven and one half years; I was in Springfield on the day of the defendant's arrest; I talked with him at the police building; . . . he said he did sell or give tickets to Mesick, and got melons and produce for them; I said, ' Did n't you get any money?' and he said, ' Occasionally I borrowed $5 or $10 at a time from him'; he said he had repaid it all to him."

John L. Rice, a witness for the government, testified as follows:

" I am city marshal of Springfield; I first saw the defendant about eight o'clock on August 17; he was brought to the station by Hadd; I thrust my hand in the left hand outside pocket of his coat and found a quantity of railroad tickets which I took out and carried back to my office; these are the tickets; several of them were torn into quite small scraps; I did n't speak to him then; I saw him afterwards, about 10 P. M., with Kochersperger in the detention room; he said he only got melons and produce from Mesick, no money; he had borrowed money from Mesick and had repaid it; I said, ' Who first suggested this traffic?' and he said that he did n't remember; I was at Mesick's between 3 and 4 P. M.; I searched the store for railroad tickets; two bunches were delivered to me from Gunn soon after 4 P. M. on August 17, 1894."

The government offered in evidence a rule of the railroad corporation, providing as follows: " Before baggage is checked, the passage ticket held by passenger should be cancelled by B. or B. C. punch." The defendant objected to its admission, but it was admitted as bearing on the testimony of Gunn as to drummers buying tickets to save charges on extra baggage; and the defendant excepted.

The tickets taken from the defendant at the police station and the tickets given to Marshal Rice by Gunn were put in evidence. The defendant objected to the introduction of the tickets; and excepted to their admission. Tickets G. C. O. 54020, and G. C. 2, 52964, were among the tickets delivered to Marshal Rice by Gunn.

The following acts of the Commonwealth of Massachusetts and the States of Connecticut and New York were introduced in evidence for the purpose of showing the corporate existence of the New York, New Haven, and Hartford Railroad Company : Connecticut Public Acts, 1871, cc. 129, 144; Massachusetts Acts and Resolves, 1872, c. 171; 8 Special Laws of Connecticut, 411; Massachusetts Special Laws, 1839, c. 101; 1844, c. 28; 1847, c. 244; 4 Private Laws of Connecticut, 874, 1025; Laws of New York, 1846, c. 195; 1848, c. 143.

At the defendant's request, the judge ordered the district attorney to elect upon which ticket he would rely, and he elected G. C. O. 54020.

At the close of the evidence, the defendant asked the judge to give the following instructions, among others :

"1. The defendant is entitled to an acquittal. . . .

"3. There is no evidence that the pieces of paper and the tickets alleged to have been embezzled were the property of the New York, New Haven, and Hartford Railroad Company, a corporation duly established and existing under the laws of the Commonwealth of Massachusetts.

"4. The tickets and pieces of paper alleged to have been embezzled were not property within the meaning of the statute, and the defendant is entitled to an acquittal. . . .

"9. Unless the jury is satisfied beyond a reasonable doubt that the defendant first appropriated the tickets within the Commonwealth of Massachusetts, the defendant is entitled to an acquittal. . . .

"12. Unless the jury is satisfied beyond a reasonable doubt that the defendant did not, at the time of receiving the tickets from the passengers, intend to turn them over to the New York, New Haven, and Hartford Railroad Company, then the defendant is entitled to an acquittal.

"13. Unless the jury is satisfied beyond a reasonable doubt

that the defendant received the ticket No. 54020 in Massachusetts, or, if he received it outside of Massachusetts, that he did not at first intend or form the intent not to deliver it up to the New York, New Haven, and Hartford Railroad Company outside of Massachusetts, the defendant is entitled to an acquittal.

"14. Actual parting with the possession of the ticket is not necessary to the consummation of the offence.

"15. If the appropriation of the ticket was consummated outside of the Commonwealth of Massachusetts by putting it aside, not punching it, or otherwise, the defendant is entitled to an acquittal."

The judge refused to give the instructions requested, and instructed the jury, among other things, as follows:

" The offence of embezzlement is the fraudulent conversion by a person of property which has been intrusted to him by another, and being the property of another; and the offence is not consummated until the conversion has taken place. There must be an intent in fraudulent acts, but the mere intent without anything further is not embezzlement. There must be an intent to do the fraudulent act, and some act toward it, and it differs from larceny. Now larceny is the taking of the property of another which is in the possession of another, or which he has a right to possess, and converting it to one's own use. In embezzlement, it is the converting to one's own use the property of another which has been intrusted to the party who is charged with the embezzlement.

" The claim of the government is, that, if you shall find the facts proved as stated, this act of this defendant is an act of embezzlement, and not an act of larceny.

" The government contends that he was intrusted with the business by this corporation of taking up tickets which passengers had purchased, — taking them up and bringing them to some place designated by the corporation and delivering them there; but that after he had taken up this ticket, instead of carrying it to the corporation and depositing it with the corporation, as he was required to do, he carried it off, or took it away and sold it, converted it to his own use, so that it never came into the hands of the corporation. If this is true, that he was a servant of this corporation and took up the ticket, and if he had carried it to

the corporation and put it into its proper place and delivered it to the servants who were to receive it, and then, after he had delivered it in the way he was required to do, he afterwards went and got the ticket, that would not have been embezzlement, but would have been larceny.

" But that distinction need not trouble you so far as this case is concerned. The question is, Did this party receive rightfully from this passenger this particular ticket, and did he, without turning it over to the corporation, dispose of it, either by concealment or by gift or for sale, or put it into somebody's else hands for sale in this Commonwealth. If he did, then he is guilty of the charge laid in this indictment.

" There has been very much evidence in this case about other transactions of this defendant with Mesick, and with other persons. Now, he is to be tried for the embezzlement of this ticket, and not for any other, because this is the one that the Commonwealth relies upon. If you shall be satisfied that he has embezzled many others before and after, and are not satisfied that he had embezzled this one, then he should be acquitted, because he is only tried for this one offence ; and the only purpose for which that evidence was introduced by the government, and allowed to be introduced, was for you to draw fair, reasonable inferences from his actions in connection with this particular one as to what was his intent and purpose in relation to this ticket. . . .

" The government contends that a man, Holmes, I believe, bought this ticket at the Grand Central station in New York, being two coupons, one running to New Haven, and the other from New Haven to Springfield ; and they assert from the testimony of Holmes that this ticket was taken up by the defendant, and that he, the defendant, remained the conductor of this train until he arrived at Springfield, and that this ticket was brought by him to Springfield, and here disposed of ; that it was not turned over, as it ought to have been, and as the rules of the corporation required, but that the defendant in some way, either by gift or by sale or otherwise, put it upon the market, in other words, converted it to his own use. It is not necessary for you to find what particular use he intended for it, or what he got for it. If he did not turn it over to the corporation, and intended to

deprive the corporation of it, then the offence will be made out so far as that part is concerned.

" It is incumbent on the government to prove that he was in the employ of the railroad corporation. You have heard the testimony in regard to that. . It is incumbent on the government to prove that this was the property of the railroad corporation. You have heard that this was issued by the railroad corporation, that it was their property; and then you heard the testimony of the witness that he bought this ticket at the station in New York, and the testimony of the same witness that he received this ride upon it· for the price paid from New York to Springfield, and that he delivered the ticket up to this conductor. Now, if these are the facts, that this was once the property of the railroad corporation by their printing it and issuing it, and that it was afterwards purchased by this passenger, that he received the ride which it called for, and it was delivered up to this conductor, then I must instruct you that this ticket became the property of the railroad corporation. So that if, after this ride was made, this defendant here in this county disposed of this ticket, it was disposing of the property which belonged to this corporation. The government must satisfy you that he did the acts with the intention of appropriating this ticket to his own use, or, in other words, of depriving the railroad corporation of this property.

" Now it makes no difference where the intent began, whether it was in New York or Connecticut, or wherever it may be, it did not become embezzlement until it was consummated by the conductor's parting with this property ; and wherever you find that his first intent was, if his intent continued, and the parting of the property — the consummation of it — was not until he arrived here in Springfield, or arrived in this county, why then the offence was committed in this county. Of course a man cannot be convicted in this county of an offence committed in New York or anywhere else; it must be an offence committed· in this jurisdiction. . . .

" Now, you will take this case, remembering that this defendant has been tried simply upon this one transaction, and the evidence in regard to other transactions, and the evidence of his going to see Mesick at different times, the evidence which might

satisfy you that he had committed other offences, you are to use only as throwing light upon his transaction in regard to this. If you are satisfied beyond a reasonable doubt that the railroad company owned this ticket, that they issued the ticket as their property, that the witness who testified purchased it, that the conductor, the defendant, took it up, that he brought it here to Springfield, that he did not deliver it, but turned it over and used it for some other purpose, and deprived the corporation of the ticket, and you shall find that to be of some value, then the defendant is guilty; if you have any reasonable doubt about it, you should find him not guilty."

The jury returned a verdict of guilty; and the defendant alleged exceptions.

The case was argued at the bar in September, 1895, and afterwards was submitted on briefs to all the judges.

*J. B. Carroll,* (*W. H. McClintock* with him,) for the defendant.

*C. L. Gardner,* District Attorney, for the Commonwealth.

LATHROP, J. The motion to quash was rightly overruled. If the indictment had contained the word "and" between the different allegations naming the property embezzled, it would have been perfect in form. We think the omission of this word is not fatal to it. It was evidently the intention of the pleader to charge the embezzlement of fifty pieces of paper, and also of fifty railroad tickets, so that his proof might be applied to either description that was deemed proper. It has repeatedly been held that an indictment charging larceny of a certain number of pieces of paper, each of a certain stated value, is good. *Regina* v. *Perry,* 1 Car. & K. 725. *Rex* v. *Mead,* 4 Car. & P. 535. *Rex* v. *Bingley,* 5 Car. & P. 602. *Rex* v. *Vyse,* 1 Moody C. C. 218. *Regina* v. *Watts,* 4 Cox C. C. 336. "No greater particularity in the description of the property is required, in an indictment for embezzlement, than in one for larceny. *Commonwealth* v. *Concannon,* 5 Allen, 502. *Commonwealth* v. *Butterick,* 100 Mass. 1." Per Colburn, J., in *Commonwealth* v. *Pratt,* 137 Mass. 98, 106. The term "railroad tickets" is a sufficient description of property without a more particular statement of what the tickets are. There is no such difference between pieces of paper and railroad tickets in reference to the statutes punish-

ing embezzlement as to make it improper to charge an embezzlement of both kinds of property in the same count.

An ordinary railroad ticket in such form as to show that an innocent holder of it is entitled to ride over a railroad ought to be considered either a certificate of the payment of fare and of the acquisition of a right to ride, or a valuable contract in force, being the informal printed statement given by the railroad corporation as its agreement to carry the bearer over its railroad. The fourth request for an instruction was therefore rightly refused.

The defendant made several requests for instructions based upon the theory that there was some evidence which would have warranted the jury in finding that the defendant appropriated the ticket outside of this Commonwealth. There was evidence that the ticket on which the government relied was sold on August 9, 1894, to one Holmes, a detective, in New York, and entitled the purchaser to a ride from New York to Springfield. Holmes testified that this ticket was taken by the defendant soon after leaving New York. It was the duty of the defendant, on his arrival in Springfield, to return this ticket to the office of the railroad company on the day he received it. The defendant was arrested on August 17, and up to this time the ticket had not been returned. There was also evidence that the defendant was in the habit, from some time prior to August 9 down to the time of his arrest, of trading tickets for produce at a shop in Springfield kept by one Mesick, and that this ticket was procured from Mesick on the morning of the defendant's arrest. We find no statement in the bill of exceptions whether the ticket had been punched by the defendant or not; but the trial proceeded upon the ground that the ticket in question had not been punched, and we assume this to be the fact.

On this state of facts, we are of opinion that the defendant was not entitled to the instructions requested. Our statutory provisions relating to embezzlement provide that one who embezzles "shall be deemed guilty of simple larceny," or "deemed guilty of larceny." Pub. Sts. c. 203, §§ 37, 39, 40, 41, 43. The crime, therefore, which a person commits who violates the provisions of these sections, is that of larceny. *Commonwealth* v. *Pratt*, 132 Mass. 246. In *Commonwealth* v. *Holder*, 9 Gray,

7, it was stated by Chief Justice Shaw to be the settled law of this Commonwealth that a person who committed larceny in another State and brought the stolen property here, could be punished for larceny here. See also *Commonwealth* v. *Cullins*, 1 Mass. 116 ; *Commonwealth* v. *Andrews*, 2 Mass. 14 ; *Commonwealth* v. *Rand*, 7 Met. 475, 477 ; *Commonwealth* v. *Uprichard*, 3 Gray, 434. In the case last cited, while the doctrine above stated was admitted, it was held not to apply to the case of goods stolen in one of the British Provinces, and brought here.

The offence of embezzlement has been often stated to be larceny committed by a certain class of persons, without a trespass, or, in other words, a statutory larceny. See *Commonwealth* v. *Macloon*, 101 Mass. 1, 6 ; *Commonwealth* v. *White*, 123 Mass. 430, 433.

It may be suggested that the doctrine above stated in regard to larceny at common law rests upon a legal fiction, namely, that by taking the stolen property into another State the thief commits a new taking, and that in embezzlement there is no wrongful taking. But we do not see why it may not equally well be said that, so long as a person who embezzles property continues in possession of it, he newly converts it. In England it is well settled that a person may commit an act in one county which renders him liable to be there indicted for embezzlement, and yet he may commit another act in relation to the same property in another county for which he may be there indicted for embezzlement. *The King* v. *Taylor*, 3 B. & P. 596. *Rex* v. *Hobson*, Russ. & Ry. 56. *Regina* v. *Murdock*, 2 Den. C. C. 298. *The Queen* v. *Rogers*, 3 Q. B. D. 28.

Since 1878, we have had a statute which seems broad enough to cover the case of a person having embezzled property in his possession, without regard to the place where he first embezzled it. As first passed it read as follows : " A person charged with embezzlement may be complained of, or indicted, tried, and sentenced, in any county in which he had possession of the property alleged to have been embezzled." St. 1878, c. 105. This was re-enacted in the Pub. Sts. c. 213, § 20, so as to read as follows : " The offence of embezzlement may be prosecuted and punished in any county in which the person charged had possession of the

property alleged to have been embezzled." While the language of the two acts differs, the meaning is the same. The statute clearly recognizes the principle that embezzlement is a continuing act, so long as the embezzler has possession of the property. If it had been intended to limit the effect of the act to the case of the first act of embezzlement taking place in this State, different language would have been used.

We are of opinion, therefore, that he could be indicted here.

The defendant was not prejudiced by the testimony of States. The various acts and resolves introduced in evidence show that the New York, New Haven, and Hartford Railroad Company, although acting under legislative authority from Massachusetts, Connecticut, and New York, is, in the transaction of business, but a single corporation. In the language of the indictment, it was " duly and legally established " in Massachusetts, as well as in Connecticut and New York, but its money and other property belong to a single owner.

There was no error in the admission of the tickets taken from Gunn by the city marshal, nor in the introduction of the rule of the railroad company in regard to punching tickets with an extra baggage punch, nor of the testimony of the witnesses Holmes, Dotzer, Butterfield, and Gunn. Until the evidence was all in, it was not known whether the Commonwealth would be called upon to elect upon which ticket or tickets it would rely. Most, if not all of this evidence was competent for consideration upon the issue as it was finally submitted to the jury after the election by the district attorney.        *Exceptions overruled.*

In the opinion of the Chief Justice and Mr. Justice Allen, the exceptions should be overruled, but upon a narrower ground, which may be expressed as follows.

Where a servant's duty in respect to his master's property in his care or custody is continuous, and extends over different States, and his first duty of accounting to his master for the property arises here, an embezzlement by him which is begun in another State but is not manifested there by any known overt act, and which is continued in this State, and is made complete and manifest here by an intentional failure or refusal to turn over the property as he is bound to·do, is an offence for which

he may be indicted and punished as an embezzlement committed here.

Mr. Justice Knowlton dissents from that part of the opinion which holds that our decisions in regard to larceny should be so extended as to make an act of embezzlement committed in another State punishable in this Commonwealth, and from that which makes the Pub. Sts. c. 213, § 20, applicable to such an act of embezzlement.