# GASSENHEIMER *v.* UNITED STATES.

--------

EMBEZZLEMENT; RECEIVING EMBEZZLED PROPERTY; INDICTMENT; RULES OF COURT; EVIDENCE OF RECEIPT OF OTHER EMBEZZLED PROPERTY; CORRUPTION OF JUROR; EVIDENCE OF DETECTIVES; INSTRUCTIONS.

1. Under D. C. Code, sec. 834 [31 Stat. at L. 1325, chap. 854], embezzlement consists, (1) in the wrongful conversion to one's own use of property which has come into one's possession by virtue of one's employment; or (2) in the fraudulent taking, making way with, or secreting with intent to convert, such property.

2. An allegation in an indictment that a railroad conductor failed to punch tickets when collected, and to deliver them to his employer; and that he thereafter converted them to his own use in the District of Columbia,—is a sufficient allegation of embezzlement under D. C. Code, sec. 834.

3. The words "convert to his own use" have a well-known legal signification, and it is not necessary, in indictments for embezzlement, to allege the particular way or means by which the conversion was effected.

4. A defendant in a criminal prosecution is entitled to a formal and substantial statement of the grounds upon which he is questioned, but not to such strictness in averment as might defeat the ends of justice.

5. *Quære,* Whether, under D. C. Code, sec. 836 [31 Stat. at L. 1325, chap. 854], it is embezzlement to receive within the District of Columbia property that has been embezzled in another jurisdiction.

6. A rule promulgated by a court for the orderly, speedy, or convenient disposition of cases, though binding to its full extent until regularly repealed or superseded, is not like a statute prescribing a rule to answer the general demands of justice or conferring an individual right, where the word "may" must be read as "shall" in order to effect its purpose.

7. Common-law rule 53 of the supreme court, providing that, where a jury has disagreed, the trial justice may transfer the cause to another justice, is not mandatory; and the matter is within the discretion of the trial justice.

8. Where a person is accused of having received embezzled property, proof of guilty knowledge at the time of the receipt of the property cannot be supplied or aided by proof of the receipt or possession of other like property not shown to have been embezzled also.

9. On an indictment for receiving embezzled property, evidence of the receipt of other embezzled property of the same kind at or near the same time, whether or not described in the indictment, is admissible as tending to show guilty knowledge of the embezzlement of the property with the receipt of which the accused is charged.

10. *Semble,* that, on an indictment for receiving embezzled property, evidence of the receipt of other embezzled property of the same kind, at or near the same time, whether or not received from the same embezzler, is admissible as tending to show guilty knowledge of the embezzlement of the property with the receipt of which the accused is charged.

11. Evidence that on the first trial of a criminal case the defendant endeavored to procure the corruption of a member of the jury is admissible on a second trial as tending to show consciousness of

guilt; but, where such evidence proves insufficient to establish such fact, it is error to refuse a motion to strike it out.

12. Where one or more of the facts essential to a conviction depend upon the evidence of detectives specially employed to procure evidence of the crime, it is eminently proper for the court to call the attention of the jury in some way to the possible bias or prejudice of such witnesses; but what form such instruction shall take must depend to a large extent upon the facts and circumstances of the particular case, and must be largely a matter of discretion with the presiding justice. (Following *Lorenz* v. *United States,* 24 App. D. C. 337, 388.)

13. On an indictment for receiving embezzled property, an instruction that the jury, if finding that the defendant received the property under such circumstances as would satisfy any man of ordinary observation, intelligence, and caution that it had been embezzled, would be justified in presuming guilty knowledge, is not open to objection, if the jury has also been charged that the guilty knowledge must be proved beyond a reasonable doubt. But in such instruction the word "authorized" would be better than the word "justified."

No. 1564. Submitted December 6, 1905. Decided January 4, 1906.

HEARING on an appeal by the defendant from a judgment of conviction by the Supreme Court of the District of Columbia in a prosecution for receiving embezzled property. *Reversed.*

The COURT in the opinion stated the facts as follows:

The appellant, Samuel Gassenheimer, was indicted and found guilty of the crime of receiving embezzled goods, knowing them to have been embezzled.

The substantial facts alleged in an elaborate indictment are:

That, prior to and at the time of the commission of the offense hereinafter charged, the Baltimore & Ohio Railroad Company, a body corporate, operated certain lines for the transportation of passengers for hire in Maryland and the District of Columbia, one of which extended from Washington to Baltimore; that stations and officers are maintained on said line at Laurel, Hyattsville, and other places for the issue and sale of tickets to passengers, which entitle them to transportation between the

places named therein; that the company employed agents called conductors, whose duties were to collect said tickets, punch them in a manner indicating that they had been used, and, upon the arrival of the trains at their destination, to turn over the same to said company at one of its offices, with a report of such collection and the trips upon which the same had been made; that from January 24 to February 22, 1904, one James H. Barnes was employed as such a conductor on trains running between Baltimore and Washington, going and returning. It is then recited that certain tickets, containing two parts or coupons, one good for going from place of sale to destination, and one for return from place of destination to place of sale, were sold by the officers of said company to purchasers. Sixteen of such tickets are minutely described by dates and numbers on the same and attached coupons, as having been sold and issued to passengers. Some of these were sold at Laurel for passage to Baltimore and return, and some from Laurel to Washington and return; some were sold at Washington for passage to Baltimore and for return, and some at Baltimore for passage to Washington and return therefrom. That these tickets and coupons were used by the purchasers upon the train of which said Barnes was the conductor, who collected the same. That they thereupon became the property of said railroad company. That the said Barnes, "disregarding his duty in the premises, purposely refrained from punching a hole in the same as aforesaid, and from turning them over as aforesaid, and from making a report of their collection as aforesaid; and that, after so collecting the same, and on the 22d day of February in the year aforesaid, and at the District aforesaid, he did wrongfully convert the same to his own use, and thereby embezzled the same." That the defendant, Samuel Gassenheimer, "well knowing all and singular the premises aforesaid, did thereafter and on the 22d day of February in the year aforesaid, and at the District aforesaid, unlawfully receive from the said James H. Barnes, whether by way of purchase or by way of gift, the grand jurors aforesaid are not informed, the said return coupons distinguished by the numbers aforesaid, and the said tickets," numbered as in the indictment 23,531 and

23,532, "with intent to defraud the said body corporate of the same." There follows a statement of the value of each.

The defendant moved to quash the indictment upon several grounds, which need not be stated, as they were restated elaborately in a motion in arrest of judgment hereafter mentioned. This was overruled, and the defendant was put upon trial, found guilty, and sentenced to confinement in the penitentiary for the term of two years.

*Mr. Henry E. Davis* and *Mr. Frank J. Hogan* for the appellant.

*Mr. James S. Easby-Smith,* Special Assistant United States Attorney for the District of Columbia, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

1. The first and thirty-seventh paragraphs of the assignment of errors are founded on the action of the court in denying the motions to quash, and in arrest of judgment.

The grounds of the motion in arrest were: 1. The indictment does not allege that the tickets therein described, or that any one of them, was embezzled in any manner described in sections 833, 834, and 835 of the Code [31 Stat. at L. 1325, chap. 854]. 2. It does not allege that the said tickets, or any one of them, came into the possession, or under the care, of the said Barnes by virtue of his employment in the District of Columbia. 3. That the indictment does not properly allege tnat the said tickets were of any value at the time of the alleged embezzlement. 4. The indictment is in other respects vague and uncertain, and does not charge any offense against the defendant. 5. The indictment does not charge an embezzlement in the District of Columbia by the said Barnes. 6. It does not charge the coming into the possession, of the said Barnes, of the said property in the District of Columbia. 7. It does not charge that said Barnes received the property mentioned in the District of

Columbia. 8. It does not charge a lawful possession or custody by the said Barnes, in the District of Columbia, of the property mentioned in the indictment.

(1) The objection as regards the allegation of the value of the embezzled property is obviously without merit, and has not been insisted upon in the appellant's brief.

(2) The other objections, save one, may be considered together as presenting the one material question: Whether the indictment charges the commission of the act of embezzlement by Barnes, as defined in the Code, in the District of Columbia.

Section 834 of the Code provides that, "if any agent, attorney, clerk, or servant of a private person or copartnership, or any officer, attorney, agent, clerk, or servant of any association or incorporated company, shall wrongfully convert to his own use, or fraudulently take, make way with, or secrete, with intent to convert to his own use, anything of value which shall come into his possession, or under his care, by virtue of his employment or office, whether the thing so converted be the property of his master or employer, or that of any other person, copartnership, association, or corporation, he shall be deemed guilty of embezzlement, and shall be punished by a fine not exceeding $1,000, or by imprisonment for not more than ten years, or both."

To convict the defendant, it was necessary to prove, first, that the property had been embezzled by Barnes in the District of Columbia, as defined in the foregoing section; and, second, that the defendant had bought, or in any way received, it from Barnes, "knowing the same to have been embezzled, taken, or secreted," as provided in section 836 [31 Stat. at L. 1325, chap. 854]. Section 834, as stated in appellant's brief, "plainly describes two classes of acts, either one of which constitutes embezzlement: The first being the wrongful conversion to his own use, by the accused, of property which has come into his possession by virtue of his employment, and the second being the fraudulent taking, making way with, or secreting with intent to convert, such property to his own use."

Upon this construction of the section, which was adopted, also, by the court in the charge to the jury, it is contended that,

if the indictment alleges any facts for the purpose of showing the embezzlement, those facts are of embezzlement by way of secretion with intent to convert, and that the acts of secretion are not alleged to have been committed in the District of Columbia. · We do not concur in this view.

The allegation that Barnes failed to punch the tickets when collected, and to deliver them to his employer with the required report, as was his duty, does not make out the offense of embezzlement through fraudulent taking, making way with, or secretion with intent to convert to his own use. Those essential words are omitted, and with evident purpose. The act of embezzlement charged is that, having collected the tickets in the line of his duty, and refrained from punching, delivering, and reporting them, wherever such acts and omissions may have occurred, Barnes thereafter converted them to his own use in the District of Columbia. The allegations of collection, omission to punch and return, are proper matters of recital introductory to the substantial charge of conversion. The charge of collection in the line of employment shows that the tickets came lawfully into the possession of Barnes; otherwise his act of conversion would constitute theft instead of embezzlement; and the charge of omission to punch and return merely goes to show that the tickets, when actually converted to the use of the collector, retained the value of their original issue for purposes of transportation, or sale to others for that use.

(3) · It is further contended that, if the indictment undertakes to charge embezzlement consisting of the wrongful conversion of the tickets after they had come into the possession of Barnes, and he had failed to punch and return them, it is insufficient, because "no facts or particulars are stated from which the court may determine whether the acts of Barnes amount in law to a wrongful conversion to his own use or not."

The indictment follows the language of the Code, which is sufficiently certain. The words "convert to his own use" have a well-known legal signification, and are of common use in indictments for theft and embezzlement. It is no more necessary in such cases to allege the particular way or means by which the

conversion was effected than it is in those cases where there is a general charge of intent to defraud the United States. *United States* v. *Simmons,* 96 U. S. 360, 364, 24 L. ed. 819, 820; *Evans* v. *United States,* 153 U. S. 584, 594, 38 L. ed. 830, 834, 14 Sup. Ct. Rep. 934. There are two ways, and apparently none other, in which Barnes could have converted the tickets to his own profitable use. One was to obtain transportation for himself, the other was to dispose of them to others for similar use or sale. By the first of these ways the defendant could not be affected, and he could be affected by the second as to such tickets, only, as may have been received by him from Barnes, knowing that they had been embezzled by the latter. The indictment charges the defendant with having received certain tickets from Barnes, which was the final act of his conversion, and nothing more was essential to inform him of the charge that he was called upon to meet. As was said in *United States* v. *Simmons, supra:* "The defendant is entitled to a formal and substantial statement of the grounds upon which he is questioned, but not to such strictness in averment as might defeat the ends of justice."

There was no error in overruling the motions to quash the indictment and in arrest of judgment.

(4) What has been said here applies to the twelfth, sixteenth, seventeenth, eighteenth, nineteenth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-eighth, twenty-ninth, thirtieth, and thirty-fifth assignments of error, as grouped for consideration under the fifth section of appellant's brief.

These are all founded on prayers refused or charges given by the court, which, as stated on behalf of the appellant, "cover the question of venue, as raised, in all its phases."

The substantial point involved in all of the instructions refused or given was whether the act of embezzlement, charged against Barnes, consisted of his collection and secretion of the tickets with intent to defraud, or of his wrongful conversion of the same to his own use in the District of Columbia. The court was right in holding that the inquiry of the jury was limited to

the ascertainment of the fact of the alleged conversion in the District of Columbia, the evidence of which consisted of his disposition of the tickets therein.     See *Com.* v. *Parker,* 165 Mass. 526, 536, 539, 43 N. E. 499, and *Davis* v. *United States,* 18 App. D. C. 468, 494.

Whether Barnes, through his collection of the tickets and failure to deliver and make report of them, might have been indicted for embezzlement, as having fraudulently secreted the same with the intent to convert them to his own use, is not a question involved in the present case.   He was not charged therewith, but with their subsequent, actual, wrongful conversion to his own use under the other clause of the section creating the offense of embezzlement.

In this view of the case, it is unnecessary to determine whether section 836 embraces the receipt of property that may have been embezzled in another jurisdiction, as embezzlement is defined in our Code, or is limited to that which may have been embezzled in the District of Columbia.

2. The second assignment of error is founded on the denial of a motion made by the defendant to transfer the cause for trial before another justice of the supreme court of the District.

It appears that the defendant was first put upon trial on this indictment November 24, 1904.   The jury, failing. to agree, were discharged on December 1.   On December 9 defendant moved to transfer the cause, under common law rule 53 of the supreme court of the District, which reads:   "In any case where a verdict has been rendered by a jury, and has been set aside by the justice presiding at the trial, or the jury have failed to agree, and have been discharged, and said cause shall again stand for retrial before said justice, the said justice may of his own motion, or at the request of either party, pass an order transferring said cause for retrial to another justice engaged in the trial of civil causes by jury, provided that any application for such transfer by either party shall be made with due diligence, and not for the purpose of delay."   Rule 111 makes the foregoing rule "apply to and govern the practice in the criminal courts so far as applicable."

The motion was overruled, and defendant applied to this court to grant him a special appeal therefrom. This application was denied because it was not deemed expedient to delay a trial that had begun, in order to determine a question that could be raised on appeal from a final judgment in the event of conviction. *Re Gassenheimer,* 24 App. D. C. 312.

Rule 53 has not been repealed or substituted by section 67 of the Code, save to the extent that a criminal case can only now be certified for trial by one criminal court to the other.

Now that the rule is regularly before us for construction, we are of the opinion that it is not mandatory in its terms. A rule promulgated by a court for the orderly, speedy, or convenient disposition of cases, though binding to its full extent until regularly repealed or superseded, is not like a statute prescribing a rule to answer the general demands of justice or conferring an individual right, where the word "may" must be read as "shall" in order to effect its purpose. Rule 53 had no such purpose. Ordained by the justices of the supreme court, sitting in general term, to meet ordinary conditions that might often exist, it must be presumed to have been written with circumspection. Bearing this in mind, and considering the apparent object in view, we think that the use of "may" instead of "shall" indicates the intention to leave the matter of its operation to the discretion of the presiding justice in a case wherein it may be invoked.

Entertaining this view, it is immaterial to consider whether the motion should not have been renewed after the second mistrial to entitle the appellant to raise the question on the third and final trial. It was not error to refuse it at any time.

3. The third, fourth, fifth, and thirty-first assignments are founded on exceptions taken to the admission of evidence tending to show the possession by the defendant of other tickets than those shown to have been collected and embezzled by Barnes, and to the charge of the court in respect thereof.

The pertinent facts recited in the bill of exceptions are these:

Evidence had been given tending to show that four of the sixteen tickets, recited in the indictment, had been collected by

Barnes, who failed to punch and return them, and had been re-
ceived and resold by the defendant.   Other evidence tended
to show statements made by the defendant, who was the pro-
prietor of a hotel adjacent to a theater, that he had often bought
tickets from theatrical people at his hotel, and that he would buy
tickets from any one that offered them.   Further evidence tend-
ed to show that Barnes had been seen to enter defendant's hotel
on February 22, 1904, go upstairs, remain there a few moments,
and then go away, but without having any conversation with the
defendant.   Evidence tended to show, also, that on the same day
defendant had sold Baltimore & Ohio Railroad tickets, issued
at several of the stations mentioned in the indictment, to a wit-
ness, who was a detective in the employ of the said railway com-
pany, and that defendant had told the witness: "You want to
be careful who you give them to; it might get us into trouble."

It further tended to show that after arrest defendant told the
witness that they were trying to find him, and that he would
better "lay low," etc.   Evidence had also been introduced tend-
ing to show that the same witness had asked defendant for tickets
between other points than those mentioned in the indictment, and
that defendant had said that "he did not get any other tickets,
and that the party he gets those tickets from only runs between
Baltimore and Washington."   In addition to this evidence, the
government, as tending to show knowledge by the defendant,
at the time of the receipt of the four tickets before mentioned,
that they had been embezzled by Barnes, offered in evidence 47
uncanceled tickets, accompanied by evidence tending to show
that they had all been purchased from the defendant between
January 6 and February 22, 1904.   Some of these are described
in the indictment, but the remainder are not.   In connection
with these, evidence was introduced tending to show that some
of them had been collected by Barnes, and not returned to the
company.   There was no evidence tending to show that the ma-
jority of them had, in fact, been collected and embezzled by
Barnes.   The defendant objected to the admission of each and
every one of these tickets that had not been described in the in-
dictment, and especially also to those which had not been shown

to have been collected and embezzled by Barnes. The objections were overruled, with exceptions reserved. Exceptions were also taken to the charge of the court referring to the tickets as evidence in the case.

The appellant concedes the existence of an exception to the general rule prohibiting evidence of other offenses in a case where, under an indictment charging the receipt of stolen or embezzled property, evidence of the receipt of other stolen or embezzled property of the same kind at or near the same time, knowing the same to have been stolen or embezzled, is offered as a circumstance tending to show guilty knowledge of the theft or embezzlement of the property, with the receipt of which the accused stands charged. He contends, however, that, in order to render such evidence admissible under this exception, there must be accompanying evidence tending to show, first, that the other property had been stolen or embezzled; second, that it had been received by the defendant with knowledge of that fact; and, third, that it must have been received from the same person.

(1) The first of these propositions is a sound one. Proof of guilty knowledge at the time of the receipt of the property of which one is accused cannot be supplied or aided by proof of the receipt or possession of other like property not shown to have been embezzled also. *Gassenheimer* v. *State,* 52 Ala. 313, 318; *State* v. *Saunders,* 68 Iowa, 370, 27 N. W. 455; *State* v. *Prins,* 113 Iowa, 72, 75, 84 N. W. 980; *Harwell* v. *State,* 22 Tex. App. 251, 253, 2 S. W. 606.

It had been shown that the defendant was engaged in buying and selling unused or unclaimed railway tickets, and he might, therefore, have lawfully come into the possession of such tickets of the same railway company through delivery by their original purchasers. When proved that he had received four of such tickets that had been embezzled by Barnes, the possession of other tickets, which had not been shown to have been embezzled, would necessarily have a tendency to induce the suspicion that he was regularly engaged in the business of handling embezzled tickets. While, therefore, the fact that he had been in the possession of many other tickets, not shown to have been embezzled,

might have a tendency to prejudice the jury against him, it would have no legitimate, legal effect to prove that he had knowledge of the character of the four tickets charged in the indictment, which the evidence tended to show he had received from Barnes after their embezzlement by the latter. The generally recognized exception to the rule which forbids evidence of other transactions than the one charged in the indictment cannot be extended so far as to permit such a probable result. We are compelled to hold that the admission of evidence of the possession of such of the tickets as had not been shown to have been embezzled was error.

(2) The second ground of the exception was not well taken. As regards all the tickets otherwise shown to have been embezzled, whether described in the indictment or not, all of the facts and circumstances in the evidence warranted the submission to the jury for determination the question whether the defendant knew their unlawful character at the time that he received them.

(3) The third ground of the exception is of no practical importance in the case as now presented, because, in so far as relates to the tickets shown to have been embezzled, the evidence tends to show their embezzlement by and receipt from the same person—Conductor Barnes. It may, however, arise upon another trial. There is some conflict of authority upon the question whether, under this exception, the proof relating to other embezzled goods shall be confined to such as shall have been received from the same embezzler; but, in our opinion, those which deny this limitation are more in accord with the reason on which the admissibility of other transactions than those charged in the indictments has been established.

We perceive no error in the charge of the court as applied to such of these tickets as may have been admissible under the rule above enounced.

4. Seven assignments of error are founded on exceptions taken to the admission of certain evidence offered for the purpose of showing that, on the first trial of the defendant upon this indictment, he had endeavored to procure the corruption of a

member of the jury; and to instructions refused as well as given, relating thereto.

Evidence of such an act has frequently been admitted as tending to show consciousness of guilt, and being, therefore, in the nature of an admission.   It would serve no useful purpose to consume time with setting forth this evidence which, in our opinion, falls short of proof of the act charged.   Certain circumstances shown therein were calculated to raise a strong suspicion that the defendant contemplated tampering with the jury, and furnished money for that purpose, but they went no further than this.   It may also be added that the failure of the prosecuting officer to realize the expectations which he had of making the necessary proof was chiefly, if not entirely, due to the fact that the witness necessarily relied on failed to make good statements which he had previously made in private.   Evidence clearly insufficient to establish the independent fact which alone justifies its admission often has, as has been said before, a very injurious effect upon the defendant, who is entitled to an unprejudiced consideration of the pertinent evidence introduced to establish his guilt of the particular crime charged in the indictment.   Grant that it was not error to admit the evidence over the objection of the defendant, because the court could not anticipate its insufficiency to establish the necessary fact, yet defendant's motion to strike it out upon its conclusion ought clearly to have prevailed.   This conclusion renders it unnecessary to consider such errors as are founded on the instructions relating to this evidence.

5. The twentieth assignment of error is founded on the refusal of the court to give the following instruction at the request of the defendant:

"10. The jury is instructed that if it find from the evidence that the witnesses Peyser, Bradbury, Patterson, and Rutledge are professional detectives, and in that capacity were employed to do the work respecting which they have testified, the jury should receive the testimony of the said witnesses with a large degree of caution, and, in considering the question of the de-

fendant's guilt or innocence, should give weight accordingly to the testimony of the said witnesses and each of them."

In the course of the general charge, the court used the following language: "Something has been said concerning detective evidence, or evidence given by detectives. The fact that a witness is or is not a paid detective does not at all settle the question whether he does or does not tell the truth; and, although there may be in this case four, I believe,—whatever the number is, is independent,—paid detectives, yet you are not justified under the law, from that fact alone, in discarding their testimony. That is a fact which you are entitled to and should take into consideration in determining whether or not they are telling the truth. If you should find, after comparing their testimony with the established facts and with the testimony of other witnesses in the case and who are not detectives, that the detectives are telling the truth, you should give their testimony the weight that it should properly have. If you are conscientiously of the opinion that they are not telling the truth, then you should give to their testimony as little weight as is proper. And so with respect to the testimony of all witnesses; because, in dealing with any and all witnesses, your duty is to ascertain how much or how little of the truth any witness has related to you from the stand, and give due weight to the result after your consideration of the same, whether the witness be a detective or not."

Where one or more of the facts essential to conviction depend upon the evidence of detectives especially employed to procure evidence of the crime, it is eminently proper for the court to call the attention [of the jury] in some way to the possible bias or prejudice of such witnesses, as compared with those who are apparently impartial and disinterested. What form such instruction shall take must depend to a large extent upon the facts and circumstances of the particular case, and be largely a matter of discretion with the presiding justice. The jury are the judges of the credibility of the witnesses, and the defendant has no absolute right to an instruction such as was asked in the case. There was no abuse of discretion in refusing the instruction

prayed, and giving, instead, the charge quoted above.    *Lorenz v. United States,* 24 App. D. C. 337, 388.

6. It is unnecessary to search the record, as would be required under the twenty-seventh assignment of error, to ascertain whether there was sufficient evidence, direct or circumstantial, that Barnes was the conductor and agent of the railway company when he collected or became possessed of the tickets.    To constitute embezzlement, it was necessary to show that the tickets came into his possession by virtue of his agency.    If such was the fact, then it can be proved upon another trial with such certainty as to avoid future contention.

7. The thirty-third assignment of error is on exceptions taken to the charge of the court relating to evidence impeaching one of the witnesses for the government.    Having defined what is meant by reputation in the community for want of truthfulness, the court charged as follows:    "If you find that the witnesses who came and spoke against him in that regard were speaking only out of motives of personal hostility, and were giving their individual opinions of Peyser as contrasted with his general name as it existed in the community, then that testimony ought not to influence you."

It was suggested, on the argument, that the cross-examination of the impeaching witnesses developed that they were actuated by personal hostility, and had in fact given their individual opinions rather than those entertained in the community generally.    We find no such evidence in the record, and, as the charge was excepted to properly, we must hold that it was erroneous.

8. The last assignments of error that require consideration are the fourteenth and thirty-second, which relate to the same subject.

At the request of the district attorney, the court gave the following special instruction to the jury:

"3. In determining whether or not the defendant knew that the tickets received by him from Barnes had been embezzled, you are to consider all the facts in the case and the circumstances surrounding the transaction.    It is not necessary for the government to prove that he had such knowledge, derived either

from his actual personal observation, or from information given by others, who knew the fact of embezzlement. The guilty knowledge of the defendant upon this subject may be inferred from the facts, if, at the time of receiving the tickets, he knew the facts which in your judgment would impress any ordinary reasonable man with the belief that the tickets had been embezzled. If, therefore, you find that the defendant received the tickets under such circumstances as would satisfy any man of ordinary observation, intelligence, and caution that they had been embezzled, you will be authorized in finding that he knew that fact, and in returning a verdict of guilty, if the other elements of guilt are established."

In that part of the general charge which was also excepted to the court explained the principle of law embodied in the foregoing special instruction, as applied to all of the circumstances in evidence from which guilty knowledge might be inferred, and was careful to inform the jury that they must be satisfied beyond a reasonable doubt before they could find that it existed. The charge concluded its recital with the statement that, if the circumstances were found to be proved, the jury would be "justified in assuming that the defendant knew." The word "justified" might possibly have been misapprehended by the jury, and it would have been better to use the word "authorized," as in the special instruction aforesaid, or to say that they might infer therefrom that the defendant had the required knowledge.

Both instructions express a familiar principle of law relating to notice or knowledge, and an instruction identical with the said special instruction has been approved in similar cases by two courts of high authority. *Collins* v. *State,* 33 Ala. 434, 436, 73 Am. Dec. 426; *Com.* v. *Finn,* 108 Mass. 466, 469.

In criminal cases, necessarily, the inference from established circumstances must be so certain and conclusive as to satisfy the minds of the jury beyond any reasonable doubt of the existence of the fact to be established; but this, as we have seen, the jury had been substantially charged. The cases relied on by the appellant in support of his contention of error in these instructions (*Hickory* v. *United States,* 160 U. S. 408, 40 L. ed. 474, 16

Sup. Ct. Rep. 327, and others following it) are not in point. In *Hickory's Case* the flight of the defendant was proved as a circumstance tending to show guilt, and error was assigned on exceptions taken to the charge of the court commenting thereon. The charge, which was lengthy and bore with extreme harshness upon the defendant, was held to be erroneous, notwithstanding certain qualifying words that were subsequently used, Its substantial effect was thus stated in the opinion of Mr. Justice White: "Indeed, taking the instruction that flight created a legal presumption of guilt, with the qualifying words subsequently used, they were both equivalent to saying to the jury that they were, in considering the facts, to give them the weight, which, as a matter of law, the court declared they were entitled to have; that is, as creating a legal presumption so well settled as to amount virtually to a conclusive proof of guilt."

The charge under consideration is not subject to that objection, and we find no reversible error in it. On another trial, the possibility of the jury being misled in that respect should be carefully avoided.

For the errors that we have pointed out, the judgment will be reversed and the cause remanded, with direction to set aside the verdict and grant a new trial.                          *Reversed.*